Opinion issued February 24, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NOS. 01-09-00948-CV

01-10-00032-CV

———————————

David F. Kendall, Appellant

V.

Kim M.
Kendall, Appellee

* * *



IN RE DAVID F. KENDALL, Relator

 



 

On Appeal from the 309th District Court 

Harris County, Texas



Trial Court Case No. 1998-57606

 



 

Original Proceeding on Petition for Writ

of Mandamus 



 



 

O P I N I O N

This is an
appeal from a child support enforcement and modification order.  Appellant David Kendall challenges the trial
court’s jurisdiction to enforce or modify his support obligations that
originated in a New York divorce decree.[1]  Alternatively, he contends the trial court
abused its discretion by increasing his support obligation to an amount greater
than the proven needs of the children and by ordering lump-sum child support
payments without good cause.  Finally, he
argues the trial court erred by failing to make the findings required by Texas
Family Code section 154.130 when deviating from the percentage guidelines and
by including the corpus, rather than just income, of his trusts in calculating
his net monthly resources.   

We affirm the trial court’s
judgment.    

I.                 
BACKGROUND

David and Appellee Kim Kendall were
married in 1987.  They have two children—a son, DK, born September 10, 1994 and a
daughter, HK, born June 21, 1996.  

A.   The New York Proceedings

In 1997, David filed for divorce in
New York.  When called for trial, the
parties announced that they had reached an agreement resolving all disputed
issues.  The parties’ stipulations about
these issues were recited into the record, acknowledged in writing by the
parties, and then expressly incorporated into the written judgment (“New York
Judgment”).     

When that judgment of divorce was
signed, the parties no longer had any property in New York.  David had moved to Mexico City and Kim and
the children lived in Houston.  The
parties’ stipulations thus included specific provisions for certain future
disputes to be resolved in Texas, where Kim and the children live, or in
another appropriate jurisdiction. 
Because the parties’ stipulations regarding both child support and the
forum for resolving future disputes are germane to this appeal, we quote
several of the relevant sections here.  

1.     The Stipulations

Kim’s attorney, Mr. Woronov, and
David’s attorney, Mr. Brenizer, recited terms of the parties’ agreement on the
record, which include:

MR.
WORONOV:           With regard to custody, the primary physical
residence of the two children shall remain with the defendant wife.  The plaintiff husband shall be granted
reasonable and liberal visitation rights including but not limited to alternate
weekends . . . .

 

We
understand that this Court will refer any future matters concerning visitation
and custody to Texas court or any court within the Uniform Custody Jurisdiction
Act which might be the home state of the children in the future.

 

COURT:  [W]ill there be an identification of the
court in Texas that handles children’s matters?

 

A:      I am not familiar with the court structure
in Texas.

 

DEFENDANT:    Would it be the county where I live?

 

A:      Yes.

 

MR.
BRENIZER:           It’s my understanding
that we are asking the Court to refer all future matters to whatever
appropriate jurisdiction.  

. . . .

MR.
WORONOV:  The parties recognize the need
for a college education for the children. 
And the husband in particular represents to his wife, to me and to the
Court, that there is a collateral source existing for that payment; it is in
the sum of at least $250,000 at the present time, pursuant to a trust
instrument that is administered now out of Boston . . . .  That he further represents that there is
enough funding in that trust to pay for an undergraduate education in behalf of
the children.  That he promises and after—to the
Court, that he will send periodic statements to the defendant of the sums in
that trust throughout the education of these children . . . . 

 

          [T]he parties agree that a private school and secondary or
high school education in a private institution is acceptable and recommended by
both parents.  In that regard, there will
be a further trust that will be funded in the sum of $100,000 . . . .

                    

MR. BRENIZER: There are several clarifications I would like
to place on the record to make sure there is no misunderstanding. . . . 

 

With
regard to the child support, that Mr. Kendall is to pay. . . . [It] will
continue until the age of 18 for the oldest child.  At which time the, what was referred to by
Mr. Woronov as the college trust — there are actually two
separate trusts, one for each of the children: [HK and DK].  And those are actually well-being trust[s].  They include more than just college
education.  So that at the time the
oldest child is 18, Mr. Kendall will stop making direct payments of child
support for that child to Mrs. Kendall and the trust provisions will kick in
and take over, the entire support as well as the cost of the college
education.  And I will also point out
that there is no limit in time contained in those trust instruments so that
there is no date or age by which a child must complete college.  

. . . . 

That’s our understanding of the Stipulation.

COURT:     All right, you heard the comments of
counsel, is that your understanding?

 

MR. WORONOV:          
Yes, Your Honor.

. . . .

COURT:     The Court will make a direction then for
you to submit to the Court the necessary findings of fact, conclusions of law,
exhibits, amended, pleadings, proper copy of this transcript, and I will sign a
proper decree.

 

That
will have full reference of all future matters both with regard to the
matrimonial—matrimonial issue and custody issue, to the Texas court, is that correct?

 

MR. BRENIZER: Yes, Your Honor.

During the hearing, the Court addressed both Kim and
David directly, confirming on the record that they were represented by counsel,
understood and agreed to the stipulations, and would abide by their terms if
incorporated into a divorce decree.   
Kim and David signed a written Adoption of Oral Stipulation, which
confirmed their belief that “the agreement is fair, reasonable and not
unconscionable” and “agree[d] to the incorporation of its terms” in the
judgment.    

2.     The New York Judgment

On August 17, 1998, the New York
court entered a judgment of divorce attaching and expressly incorporating all
the terms of the parties’ stipulations in open court, and further

ORDERED,
ADJUDGED AND DECREED, that except for issues regarding equitable distribution,
all future questions concerning child support, maintenance, enforcement,
interpretation or modification of this Judgment of Divorce shall be referred to
the appropriate Court in the State of Texas where the Defendant and the
children of the parties reside, or any other appropriate Court having
jurisdiction; and it is further

 

ORDERED,
ADJUDGED AND DECREED, that within ten (10) days after entry with the County
Clerk, a copy of this Judgment of Divorce shall be filed by Defendant’s
attorneys with the Clerk of the appropriate Court in the State of Texas where
the Defendant and the children of the parties currently reside pursuant to, and
if required, by the laws of the State of Texas.

 

Nothing in the record reflects that Kim filed the
judgment in Texas within 10 days of the judgment pursuant to this last
paragraph.  No appeal was taken from the
New York Judgment. 

B.   The 1998/1999 Texas Proceedings

On December 2, 1998, David filed,
in Harris County, a “Petition Incident to Divorce Seeking Jurisdiction of this
Court to Consider Matters Related to Divorce and Custody,” in which he
requested the court modify the terms of the New York divorce degree by entering
a Christmas and Thanksgiving holiday visitation schedule.[2]  David’s petition referenced the New York
Judgment and recited that: 

The
Respondent, KIM M. KENDALL, and the minor children of the marriage are residing
in Houston, Harris County, Texas and as set out in the terms of that Judgment
for Divorce, all future proceedings incident to this divorce and custody matter
are to be heard in Harris County, Texas. 
Therefore, Harris County, Texas is the appropriate venue for this
motion.

 

Kim countered with a “Motion to
Modify Support Order” that similarly asked the court to “construe and clarify
the terms of the [New York Judgment] to make them more specific.”  Specifically, she asked the court to clarify
the location, time, and amount of payment of child support, as well as the
method and conditions for David to satisfy his obligation to reimburse Kim for
certain of the children’s medical expenses. 
Kim’s motion recited that the “Court has continuing, exclusive
jurisdiction of this case as a result of prior proceedings.” 

Pursuant to an agreement, the
parties’ claims were submitted to an arbitrator and, on October 12, 1999, the
trial court incorporated the arbitrator’s decision into a “Final Order” (“1999
Order”).  That order, among other things,
(1) designated Kim and David as joint managing conservators of DK and HK, (2)
provided a detailed possession order, (3) incorporated David’s existing child
support obligations and specified a wage withholding order would be entered and
support would be paid through Harris County, (4) ordered David to produce to
Kim copies of the children’s Secondary Education Trusts (“College Trusts”)  as well as provide Kim with quarterly trust
statements going forward, and (5) ordered Kim to produce to David copies of the
Irrevocable Children’s Trust (“Education Trust”) and provide David with
quarterly statements going forward.  No
appeal was taken from that order.  

C.   The 2004/2005 Proceedings 

On February 5, 2004, Kim filed, in
the same Harris County court, a “Petition to Modify Parent-Child Relationship”
requesting that the court’s October 1999 Final Order be modified to (1)
“specify specific weekends for [David’s] visitation,” (2) “modify or clarify”
various child support provisions from the earlier order “to render them
enforceable by contempt,” and (3) permanently enjoin David from engaging in
certain acts.  The petition recited that
the “Court has continuing, exclusive jurisdiction of this suit as a result of
prior proceedings and in consideration of Chapters 152 and 159 of the Texas
Family Code.”  

In response, David filed a
“Counter-Petition to Modify Parent-Child Relationship” requesting modification
of the “Final order . . . signed by this Court in the above referred to cause
on October 12, 1999.”  This petition
requested modification of the possession order and that temporary orders be
entered.  These claims proceeded to trial
on April 14, 2005, resulting in the court entering a comprehensive “Order in
Suit to Modify Parent-Child Relationship” (“2005 Order”) that included, among
other things, specific provisions governing possession and travel, as well as
details about David’s and Kim’s respective rights and obligations with regard
to life insurance, health insurance, and the reimbursement of uncovered medical
expenses.  That order also recited that
the court, “after examining the record and the evidence and argument of
counsel, finds it has jurisdiction of the case and of all the parties and that
no other court has continuing, exclusive jurisdiction of this case.”  

D.   The 2008/2009 Proceedings     

On January 7, 2008, again in Harris
County, David filed a “Petition to Modify the Parent-Child Relationship”
seeking modification of the court’s 2005 Order to appoint David “as the person
who has the right to designate the primary residency of the children.”  His petition recited that the court “has
continuing, exclusive jurisdiction of this suit.”  Kim filed a counterpetition also seeking to
modify the 2005 Order to increase David’s child support obligation, including
ordering him to pay the children’s private secondary school educational
expenses.  That petition again recited
that the “Court has continuing and exclusive jurisdiction as a result of prior
proceedings.”  After David nonsuited his
claims for affirmative relief, Kim filed a “Motion for Enforcement and Order to
Appear” in which she complained that David had failed to maintain life
insurance policies as mandated by the New York Judgment, and failed to provide
to Kim evidence of such coverage, as required by the court’s 2005 Order.  Kim also asserted that, in violation of the
Stipulations incorporated into the New York Judgment, David had failed
establish trusts for the children that “require[d] the trustee to pay for
either child’s college education” and that the trust established for their
daughter, HK, “lacked sufficient funding to pay for the child’s undergraduate
college education.” 

1.     The trial

A trial on the merits was held to
the court on April 23, 2009 on Kim’s claims. 
Primarily at issue at were (1) Kim’s request that David be ordered to
pay the children’s high school tuition because the funds in their Education
Trust were depleted (2) Kim’s claim that HK’s College Trust did not contain
sufficient funds to pay for her college, and (3) Kim’s claim that David had
failed to maintain a life insurance policy for the children as provided for in
the New York Judgment.    

a.     High School tuition

When the
parties divorced, pursuant to their stipulations incorporated into the New York
Judgment, the Education Trust (a/k/a the David F. Kendall irrevocable
Children’s Trust) was created.  That
trust, which was dedicated to the children’s primary and secondary private
education expenses, was funded with $100,000. 
Kim and her brother operate as trustees. 
Over the years, the trust funds have been used to pay the children’s
tuition and other educational expenses. 
The value of that Education Trust in March 2009, before the children’s
tuition for the 2009-2010 school year was paid, was about $20,000.    

HK’s eighth
grade tuition for the 2009–2010 school
year is $6,670.  DH starts high school in
Fall 2009.  DK would like to attend, and
has been accepted by, a private school with tuition and fees for the 2009–2010 school year of $14,100.  

Both
parties stipulated at trial that they want the children to go to private school
and agree that the children’s public school option is unsuitable.  Kim presented information about her income as
a nurse and her monthly budget, and she testified that she does not have the
resources to pay for either HK’s or DK’s private schooling.  She further testified that she had looked
into financial aid assistance at her children’s schools, but did not qualify at
least in part because David’s income was taken into consideration.  David testified that “the children should
have resources from me to go to private high school.  I think I’ve paid them and I’m willing to pay
more because the trust fund has run out, and I want to see them go to private
school.”  He complained, though, that Kim
is a poor money manager and expressed the view that because he pays her $2,000
a month in child support, he has already paid more than the cost of a complete
private school tuition.  Ultimately, he
testified that he should pay for 50% of the children’s private high school
tuition.  

b.   
HK’s College Trust

An estate
and trust expert, Stephanie Donaho, testified about the provisions and
operation of seven trusts that benefit David and/or his children, including the
DK College Trust, of which DK is the beneficiary, and HK College Trust, of
which HK is the beneficiary.  As of
December 31, 2008, the DK College Trust had a balance of $571,381, and the HK
College Trust had a balance of $97,765. 
Both trusts were established by David’s father, and unrelated parties
serve as trustees. 

Donaho
testified that the College Trusts vest the trustees with absolute discretion in
matters of disbursement for the benefit of the trusts’ respective
beneficiaries.  In other words, there is
no provision “requiring them to disburse funds for college or anything
else.”  The terms of DK’s College Trust
do not permit the trustees to extend money for the benefit of HK.    

Kim
testified at trial that she just recently received these trust documents and
information about their balances and terms. 
She understood David’s agreement in their New York stipulation that
there was $250,000 dedicated to each children’s college and living expenses
after they reached the age of 18.  David
agreed that there was not—at the time
the New York Judgment was entered or the time of trial—sufficient funds in the
HK College Trust to pay HK’s college and living expenses.  He also agreed that he represented to the New
York court that “a source existed to pay for [the] children’s college
education.”  He testified to his belief,
though, that while he represented the funds were currently available in the New
York proceedings, the New York judgment does not actually obligate him or
anyone else to pay for HK’s college.  He
does foresee additional contributions to HK’s and DK’s College Trusts by
himself, his current wife, and his father after HK and DK reach adulthood—the point at which he is comfortable that Kim
would not somehow benefit from that money. 
Ultimately he testified that he believes the children’s college is his
and Kim’s shared obligation.  

c.      The Life Insurance policy

Kim
testified that she had never received confirmation of David’s purchase of the
$200,000 life insurance policy for the benefit of the children that was
required by the New York Judgment and the 2005 Order.  David agreed that he never obtained the
insurance because certain health problems rendered it cost prohibitive, but
explained that he had instead recently arranged by letter to the trustee of one
of his trusts to provide $100,000 for each child upon his death.  

d.    The trial court’s rulings

The trial
court ruled, at the close of the hearing, that the children have basic needs
beyond what is being met with the current $2,000 in child support.  The court found, based on the children’s
situation and the public school they are zoned to, that they have a need to
attend private school.  The court ordered
David to provide, either directly or through trust funds, the tuition and fees
for the children’s high school, and ordered Kim to pay all extracurricular costs
associated with their education. 

The court
also found that David had represented to the New York court that both the DK
and HK College Trusts contained $250,000, which was not true.  Accordingly, the court stated it would enter
an order that “reflects the representations made for the Court in New York for
the kids’ college education.”  The court
indicated that it would not require David to purchase life insurance, but would
fashion an alternative remedy to achieve the same security in the event of his
death.  Finally, the Court announced it
would adjust the child support “step-down” when DK graduates high school to
conform with Texas law.                  

2.    
The May 6,
2009 Judge’s Report and May 11, 2009 Interim Order Regarding Child Support and
Private School 

 

On May 6,
the court issued a report reducing several of his rulings and findings to
writing.  It ordered David’s child
support of $2,000 per month to continue until DK is emancipated, at which point
it decreases by 5%.  The court further
ordered David to pay the children’s private high school tuition directly to the
schools.  

The report
contains a finding that David’s representations to the New York Court about the
assets in the children’s College Trusts were not true as to HK’s Trust.  Accordingly, the court ordered David to
“transfer assets to the [HK Trust] so that the aggregate corpus of the trust is
$ 250,000.”  It also ordered David to
change the terms of the HK and DK College Trusts to “make it mandatory that the
trustees utilize the trust corpus and trust income for the undergraduate
college costs” of each beneficiary.  

The court
further found David made false representations to the New York court about the
existence of life insurance policies. 
Recognizing though that life insurance was cost prohibitive, the court
ordered David to instead post two separate bonds, $100,000 each, for the
benefit of each child in the event of his death before they reach the age of
majority.  

Finally,
the court ordered David to pay $41,525 in attorney’s fees to Kim’s attorney,
finding that—as a result of these
proceedings initiated by David—it was
proven that he made misrepresentations to the New York court, failed to comply
with obligations under the New York Judgment, and hindered and delayed the
discovery process.  The report also
ordered David to pay the children’s amicus attorney’s fees.  

Kim filed a
motion for partial reconsideration directed at the requirement that David
change the terms of the College Trusts because the trusts are not parties and
David has no ability to change their terms. 
As an alternative, Kim requested that David be directly obligated to pay
HK’s undergraduate college costs and receive a credit for any sums instead paid
by the HK College Trust or any other family trusts.  In his response to that motion, David agreed
that he did not have ability to change trust terms, but argued that Texas law
did not allow the court to require him to pay any undergraduate college
costs.         

3.    
The October 2009 Reformed Final Order

Following
additional briefing and the entry of several interim orders and an entry of
judgment hearing, the trial court entered the October 29, 2009 Reformed Order
Modifying Child Support and Order on Enforcement that is the subject of this
appeal. (“2009 Reformed Final Order”)    

The court
found that there has been a material and substantial change in circumstances
since the 2005 Order, and that modification is in the best interest of the
children.  The court’s order further
stated that, pursuant to section 154.130 of the Texas Family Code, “application
of the percentage guidelines in this case would be unjust or
inappropriate.”  The court ordered:

·       
David to continue paying $2,000 per month in child support until DK is
emancipated, at which time the amount steps down to $1,600; and   

·       
David to pay, as child support, the children’s private high school
tuition.  

Finding
that David had failed to satisfy his obligation to maintain life insurance
obligations as mandated by the New York Judgment, the court ordered David to
deposit $100,000 per child, as security for his child support obligation, with
the registry of the court to until each child graduates college or reaches the
age of 25.  

The court
found that David’s representations about HK’s College Trust in the New York
divorce proceeding were “not true” and that David “failed to comply with and
abide by the provisions of the New York Judgment.”  The court accordingly ordered David to
transfer funds or assets to that trust “in an amount sufficient to bring the
aggregate value of that trust corpus to the amount of $250,000.”  David was further ordered to use his “best
efforts” to cause the terms of the College Trust to be modified “to require the
trustees of said trusts to disburse funds to pay each beneficiary’s college
education expenses, as was represented to and relied upon by Kim M. Kendall as
part of the parties’ Stipulations in the 1998 New York Judgment of Divorce.” 

Finally,
the court awarded additional fees to the children’s amicus attorney, with
$1,000 payable by David and $170 by Kim. 
David was further ordered to pay $41,525.00 to Kim’s attorney for
“services rendered in the modification action and the proceedings to enforce
the prior Texas and New York Judgments.”   


The court
noted in its order that David has already complied with his obligation to
deposit $200,000 in the court registry in lieu of life insurance, and his
obligation to pay Kim’s attorney $41,525.00. 
David timely filed a notice of appeal and superseded his obligation to
transfer assets to HK’s College Trust with a deposit into the court registry in
lieu of a bond.         

At Kim’s
request, following David’s perfection of an appeal, the court entered an order
awarding her conditional appellate fees for successfully defending any appeal
to the court of appeals or the Supreme Court of Texas.    The court also entered findings of facts
and conclusions of law in support of the 2009 Reformed Final Order.    

E.   This appeal  

On appeal,
David asserts that the trial court (1) “abuse[d] its discretion by assuming
jurisdiction over the Counter-Petition to Modify and Motion to enforce,” (2)
“abuse[d] its discretion when it increased David’s child support obligation to
an amount greater than the proven needs of the children and included lump sum
child support payments without a showing of good cause,” and (3) “err[ed] by
failing to make the finding requested by Texas Family Code 154.130.”  Finding no reversible error, we affirm.

II.              
JURISDICTION

David
argues that Kim’s failure to register the New York Judgment in accordance with
the Uniform Interstate Family Support Act (“UIFSA”), codified under Chapter 159
of the Texas Family Code, deprived the trial court of subject-matter
jurisdiction to enforce or modify that foreign support order.  Similarly, he contends that none of the trial
court’s orders over the years conferred continuing jurisdiction for the trial
court to enter the 2009 Reformed Final Judgment because, David asserts, these earlier
judgment all suffered the same jurisdictional defect and are thus likewise
void.     

Finally,
David contends that he and Kim never effectively consented in the New York
proceedings to a Texas court’s exercising jurisdiction to modify the support
provisions of the New York Judgment. 
Accordingly, even if the trial court had jurisdiction to enforce the
support provisions of the New York Judgment despite the lack of registration,
he asserts, it was without jurisdiction to modify its terms.    

In
response, Kim counters “that the New York judgment has in fact been registered,
in substantial compliance with UIFSA requirements.”  Alternatively, she contends UIFSA
registration is a procedural requirement that David waived by failing to timely
assert.    

Kim takes
issue with David’s characterization of the trial court’s 1999 Order and 2005 as
not substantively modifying the New York Judgment’s child support
obligations.  This is significant,
according to Kim, because David never took a direct appeal from those orders in
which the trial court assumed exclusive, continuing jurisdiction to modify the
New York Judgment’s support provisions.   
Thus, Kim argues, David has waived his right to challenge the validity
of those prior orders.  

Kim
likewise disputes David’s assertion that the parties did not file “consents” in
the New York court authorizing the Texas courts to assume jurisdiction over
support modification proceedings.  She
asserts the combination of the stipulations read into the record, written
adoption of oral stipulation, and entry of judgment incorporating the
stipulations and written adoption suffices. 


Finally,
both parties argue that their respective positions further the purposes of the
UIFSA.  According to David, in 1998,
2005, and 2009—each time Kim sought
affirmative relief in the trial court—the court was “required by law to decline jurisdiction to modify a
foreign child support order.”  By instead
exercising jurisdiction, David argues, the trial court has thwarted the primary
purpose of the UIFSA, i.e.,
“prevent[ing] multiple courts from assuming subject-matter jurisdiction to
modify a child support order, thereby insuring that only one valid child
support order is in effect at one time.” 


Kim agrees that the primary purpose of the UIFSA “is
to eliminate duplicate, conflicting orders,” but she counters that “[s]ince
David and Kim divorced in New York in 1998, there has never been any question
raised as to whether multiple orders regarding child support applied or which
state was properly exercising jurisdiction over those matters which relate to
the parties’ children, until now.”   
According to Kim, “each of the underlying Texas proceedings which have
been initiated and resolved since 1998 have fully satisfied the purposes that
UIFSA was designed to achieve and that [it is] David’s effort to challenge the
trial court’s jurisdiction strik[ing] at the very heart of the uniform act’s
goal of simplifying and streamlining child support matters.”     

For the reasons explained below, we reject David’s
jurisdictional challenge and hold that the trial court properly exercised
jurisdiction to both enforce and modify the New York Judgment.      

A.   Standard of Review

Subject-matter
jurisdiction refers to “the court’s power to decide a case.”  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 553–54 (Tex. 2000).  As such, it cannot
be waived and can be raised at any point in a proceeding. Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 851 (Tex. 2000).  Although David couches his argument in terms
of whether the trial court abused its discretion in assuming subject-matter
jurisdiction, such challenges are properly reviewed by this Court de novo.  E.g.,
Reese v. City of Hunter’s Creek Village, 95 S.W.3d 389, 391 (Tex. App.—Houston
[1st Dist.] 2002, pet. denied).   

B.   Relevant Statutory Provisions

The UIFSA
is a uniform law, adopted by all United States jurisdictions, governing
procedures nationwide for establishing, enforcing, and modifying child support
orders.  Under the UIFSA, a “registered
order issued in another state is enforceable in the same manner and is subject
to the same procedures as an order issued by a tribunal of this state.”  Tex.
Fam. Code Ann. § 159.603(b)
(Vernon 2008).   “A support order . . .
issued in another state is registered when the order is filed in the
registering tribunal of this state.”  Id. § 159.603(a).  The UIFSA provides a
specific procedure for the registration of interstate support orders for both
enforcement and modification purposes:

§ 159.602.  Procedure
to Register Order for Enforcement

(a) A support order or income-withholding
order of another state may be registered in this state by sending to the
appropriate tribunal in this state:

 

(1) a letter of transmittal to the tribunal
requesting registration and enforcement;

 

(2) two copies, including one certified copy,
of the order to be registered, including any modification of the order;

 

(3) a sworn statement by the person
requesting registration or a certified statement by the custodian of the
records showing the amount of any arrearage;

 

(4) the name of the obligor and, if known:

 

(A) the obligor’s address and social security
number;

 

(B) the name and address of the obligor’s
employer and any other source of income of the obligor; and

 

(C) a description of and the location of
property of the obligor in this state not exempt from execution; and

 

(5) except as otherwise provided by Section
159.312, the name of the obligee and, if applicable, the person to whom support
payments are to be remitted.

 

(b) On receipt of a request for registration,
the registering tribunal shall cause the order to be filed as a foreign
judgment, together with one copy of the documents and information, regardless
of their form.

 

. . . .

 

Id. § 159.602 (enforcement); see also id. § 159.609
(same procedures for registration when seeking modification of foreign support
order).  When a support order is
registered, “the registering tribunal shall notify the nonregistering party.”  Id.
§ 159.605(a).  A copy of the registered order must be
included, along with notice that a hearing must be requested within 20 days if
the nonregistering party contests the validity of the judgment on certain
enumerated grounds.  Id. 
§ 159.605; see also id § 159.606 (procedures for contesting validity or
enforcement of registered order).  There
are eight statutory defenses that can be raised by the nonregistering party:
(1) the issuing court lacked personal jurisdiction over the contesting party;
(2) the order was obtained by fraud; (3) the order has been vacated, suspended,
or modified by a later order; (4) the issuing tribunal has stayed the order
pending appeal; (5) there is a defense under the law of this state to the
remedy sought; (6) full or partial payment has been made; (7) the statute of
limitations precludes enforcement of alleged support arrearages; or (8) the
alleged controlling order is not the controlling order.  Id.
§ 159.607(a).  If the contesting party does not establish
any of these defenses to the validity or enforcement of the order, the foreign
order is confirmed and enforceable.  Id. § 159.607(c), § 159.603.

Registration
is required, but not sufficient, when seeking to modify (rather than simply
enforce) a support order of another state. 
Id. § 159.610. 
Another prerequisite to modification by a Texas court is generally that
the petitioner seeking modification is a “nonresident of this state.” Id. § 159.611(a)(1). 
Alternatively, and relied upon by Kim in this case, the court can instead
find:

this state is
the state of residence of the child and the child, or a party who is an
individual, is subject to the personal jurisdiction of the tribunal of this
state and all of the parties who are individuals have filed in a record in the issuing
tribunal consents for a tribunal of this state to modify the support order and
assume continuing, exclusive jurisdiction.

 

Id. § 159.611(a)(2). 
“Upon issuance of an order by a tribunal of this state modifying a child
support order issued in another state, the tribunal of this state becomes the
tribunal of continuing, exclusive jurisdiction.”  Id.
§ 159.611(d).  In other words, once a
Texas court properly exercises jurisdiction to modify a foreign support order,
that court retains jurisdiction to enter additional later modification
orders.    

C.   Application

Kim relies on two jurisdictional bases in support of
the trial court’s 2009 Reformed Final Judgment: (1) the continuing, exclusive
jurisdiction obtained and exercised by the court in entering its 1999 Order and
2005 Order, and (2) her independently meeting the jurisdictional requirements
to seek modification and enforcement in the 2008/2009 proceedings leading to
the 2009 Reformed Final Judgment.  

David was the first party to invoke the jurisdiction
of the trial court with the 1998 filing of a Petition Incident to Divorce
Seeking Jurisdiction of this Court to Consider Matters Related to Divorce and
Custody.  His filing in that proceeding,
in which he sought to have the court modify certain custody provisions,
includes a copy of the New York Judgment, but is silent as to “registration.”[3]  In response, Kim filed a Motion to Modify
Support Order, which likewise attached a copy of the New York Judgment, and is
likewise silent as to “registration.” 
The resulting 2009 Order contains no jurisdictional findings or
recitations, but it incorporates several of the New York Judgment’s
provisions.    

The 2005 Order was also entered in response to the
parties’ cross-motions, this time both seeking modification of the 1999
Order.  Unlike the 1999 Order, the 2005
Order recited that the court, “after examining the record and the evidence and
argument of counsel, finds it has jurisdiction of the case and of all the
parties and that no other court has continuing, exclusive jurisdiction of this
case.”     

David argues that, in support of the trial court’s
jurisdiction to issue the 2009 Reformed Final Order, Kim relies only on “the
continuing, exclusive jurisdiction apparently acquired ‘ . . . as a result of
prior proceedings.’”  But, according to
David, “[r]egardless of whether the 1999 Final Order or the 2005 order actually
modified the child support provisions of the New York Judgment, neither order
can serve as the basis of the subject-matter jurisdiction for the 2009 Reformed
Order.”  This is because, he contends,
the trial court’s “failure to acquire subject-matter jurisdiction under Section
159.611 to modify the New York child support order during the 1998-1999 and
2004-2005 litigation renders the subject orders void, prohibiting either order
to serve as a basis for future subject-matter jurisdiction of the Texas
Court.”  Specifically, he complains the
earlier orders were rendered void because (1) the New York Judgment was never
registered (which he characterizes as a jurisdictional prerequisite to both
enforcement and modification), and (2) the parties never filed consents in New
York (an additional jurisdictional prerequisite to modification).     

Kim responds that the parties’ both filing the New
York Judgment in the 1998/1999 proceedings effectuated registration “in
substantial compliance with UIFSA requirements,” See Tex. Fam. Code Ann. § 159.602, and that
David’s complaints about improper registration were waived by his failure to
appeal the 1999 Order.  She acknowledges
that subject-matter jurisdiction cannot be waived, but argues that—as a matter
of first impression in Texas—this Court should conclude the procedural
mechanics for registering a foreign order are procedural, not
jurisdictional.  She points to the two
purposes of the registration: (1) providing notice of intent to rely on the
foreign order, and (2) giving the opposing party the opportunity to contest the
validity or enforceability of the foreign order.  See,
e.g. Jolly v. Jolly, 130 S.W.3d 783, 787 (Tenn. 2004).[4]  She notes that David has not challenged the
validity or enforceability of the underlying order, and that that the statute
specifically excuses defects in the form of registration, which she
characterizes as inconsistent with the notion that that the procedures carry
jurisdictional consequences.    

Finally, Kim disagrees that the trial court lacked
the jurisdiction to modify the support provisions of the New York
Judgment.  According to Kim, the New York
stipulations, incorporated into the New York Judgment, were sufficient to
satisfy the requirement that the parties have filed “in the issuing tribunal
consents for a tribunal of this state to modify the support order and assume
continuing, exclusive jurisdiction.” Tex.
Fam. Code Ann. § 159.611(a)(2).  

Because the bulk of the parties’ jurisdictional
arguments are directed at the threshold issues of registration and consent, we
first address: (1) whether registration is procedural or jurisdictional, and
(2) whether the parties effectively consented to transfer of jurisdiction over
support issues from New York to Texas. 
We then consider David’s arguments in light of our resolution of those
questions.         

1.    
Registration

The parties agree that the plain language of
sections 159.602 and 159.609 of the Texas Family Code require a foreign support
order be registered in Texas as a prerequisite to enforcement or
modification.  The parties, however,
disagree about what constitutes sufficient performance of that registration requirement,
what the consequences of failing to register are, and when a complaint about
failing to properly register a foreign support order may be asserted.  

No Texas state court has squarely addressed the
issue of whether failure to comply with a UIFSA registration requirement
deprives a Texas court of subject-matter jurisdiction to enforce or modify a
foreign support order.  But David asserts
that “[j]urisdictions with statutes similar to Section 159.611 have uniformly
held that the requirements of the UIFSA provision at issue must be strictly
construed in order for a court to acquire subject-matter jurisdiction to modify
a child support order issued by another state.” 
In only three of the cases he cites, however, did the court characterize
compliance with the registration procedures as a prerequisite to the exercise
of subject-matter jurisdiction, but in each of those three cases, the court
found other impediments to the exercise of jurisdiction in addition to
registration deficiencies.  E.g., 
Auclair v. Bolderson, 6 A.D.3d 892, 895 (N.Y. App. Div. 2004)
(holding New York court lacked subject-matter jurisdiction to modify or enforce
modification of Florida support order because the “petitioner failed to
demonstrate that the Florida judgment was registered in New York” and because
there “is no indication in the record . . . that the parties have filed any
documents in the Florida Circuit Court consenting to New York’s jurisdiction”
as required because petitioner was a New York resident); Lamb v. Lamb, 707 N.W.2d 423, 436 (Neb. Ct. App. 2005) (holding
Nebraska court lacked subject-matter jurisdiction to modify Wyoming support
order because the order was not registered and because no consent was filed in
Wyoming as required because petitioner was Nebraska resident);  Cepukenas
v. Cepukenas, 584 N.W.2d 227, 229 (Wis. Ct. App. 1998) (holding Wisconsin
court lacked subject-matter jurisdiction to modify Virginia support order
because order was not registered and because no consent was filed in Virginia
as required because petitioner was a Wisconsin resident).[5]

Our own research reveals that other jurisdictions
have expressly rejected the argument that specific UIFSA registration procedural
requirements are jurisdictional, finding instead that the filing of foreign
support order satisfies the registration requirement so long as no one was
prejudiced by the failure to follow the statutory procedures.  For example, in Owen v. Phillips, a Washington court rejected the argument that the
petitioner’s “failure to properly register deprives the court of subject matter
jurisdiction,” noting that after the foreign support order at issue was filed
with the court, the respondent “received notice of registration and had ample
opportunity to answer.”  108 P.3d 824,
829 (Wash. Ct. App. 2005).  The court
emphasized that respondent “suffered no prejudice from the error,” and reasoned
that accepting the filing as sufficient registration “furthers the statutory
policy”: 

Public policy
supports our determination that substantial compliance is the appropriate
standard where there is no prejudice to the obligor.  UIFSA encourages parties to register valid
child support orders, and the procedural safeguards are designed to minimize
the risk of prejudice to the obligor. 
UIFSA does not support a policy that punishes support recipients for
minor, harmless procedural errors in registration.  [The respondent] does not dispute the
validity of the Kansas order or that he owes back support.  Holding that the registration was invalid
under these circumstances would undercut UIFSA’s purpose.

 

Id.    

A Mississippi court has similarly concluded that a
father’s filing of a foreign divorce decree at the onset of a child-custody
proceeding satisfied the UIFSA registration requirement for the mother’s
requested modification of that order’s support provisions in the same
litigation.  Nelson v. Halley, 827 So. 2d 42, 45–46 (Miss. Ct. App. 2002) (en
banc).  In that case, the father filed
suit in Mississippi attaching a California divorce decree and seeking primarily
to modify its custody terms to award him custody of one of the parties’
children.[6]  Id.
at 44.  The respondent
counter-petitioned, requesting modification of the California divorce degree to
increase the obligor’s support obligation as to the parties’ other children.  Id.  That request was granted and the obligor
appealed, arguing that the court lacked subject-matter jurisdiction to modify
the California support order in part because the mother did not properly
register the order under the UIFSA.  Id. at 44–45.  The court of appeals rejected this argument,
noting that—as in this case—the “foreign judgment and most of [the required
information] was filed not by the mother who was seeking a modification, but by
the father when he began his suit seeking modification of custody.”  Id. at
45.  While some statutorily required
information was missing, the foreign judgment “had adequately been filed,” and
was “of record in Mississippi in the proper clerk’s office, regardless of who
filed it.” Id. at 46.[7]

Generally, under Texas law, failure to establish a
statutory procedural prerequisite does not deprive the trial court of
subject-matter jurisdiction over a plaintiff’s claim if the statutory
prerequisite is merely a condition on which the plaintiff’s right to relief
depends.  Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 75–77 (Tex. 2000).  “A statutory requirement is jurisdictional,
as opposed to substantive, only when the Legislature’s intent so indicates.” City of Seabrook v. Port of Houston Auth.,
199 S.W.3d 403, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. dism’d) (en banc).  

Like other states, we agree with Kim that the
specific procedural registration requirements enumerated in the UIFSA’s
enforcement provisions codified at section 159.602 of the Texas Family Code are
not jurisdictional here, where the parties had actual notice of the
proceedings, expressly invoked the jurisdiction of the Texas court, and
stipulated in the initial New York Judgment that further proceedings would take
place in Texas.  While no Texas case has
squarely addressed this issue under the UIFSA, our conclusion is consistent
with this Court’s interpretation of similar foreign child support registration
procedures under the UIFSA’s predecessor, the Revised Uniform Reciprocal
Enforcement of Support Act (“RURESA”).  See Longhurst v. Clark, No.
01-07-00226-CV, 2008 WL 3876175, at *3–4 (Tex. App.—Houston [1st Dist.] Aug.
21, 2008, no pet.) (mem. op.).  In Longhurst a child-support obligor
challenged the validity of a Texas child-support order by collaterally
attacking the earlier Texas order in which the court first assumed jurisdiction
to enforce and modify a Colorado support order on the grounds that the Colorado
order was never properly registered under RURESA.  Id.
The applicable version of RURESA required three certified copies of the foreign
order be transmitted to the prosecuting attorney at the Attorney General’s
office, who in turn was required to transmit them to the clerk of the court for
filing in the court’s registry of foreign support orders.  Id.
at *3.  Much like David argues here, the
obligor in Longhurst contended that
“because the procedural requirements for registration are mandatory, the
Colorado order’s absence prevented the trial court from having subject matter
jurisdiction to enter any judgment based on the order.”  Id.  at *4. 
This Court disagreed, explaining that “[r]egistration of a foreign
support order is simply a statutory prerequisite to enforcement of the order in
Texas.”  Id.  We reasoned that a
“court’s action contrary to a statute” means the action is erroneous or
voidable, but not void, so jurisdiction is not implicated. Id.  That reasoning applies
with equal force to UIFSA’s registration procedures in section 159.602.  We thus likewise conclude that they are not
jurisdictional.      

2.     Consent

Because Kim—the party seeking modification of a
support order—resides in Texas, the parties agree that both parties’ consent is
a necessary prerequisite to a Texas court’s acquiring jurisdiction to modify,
rather than simply enforce, the support obligations in the New York
judgment.  Under Texas’s version of the
UIFSA effective when the trial court entered both the 2005 Order and the 2009
Reformed Final Order, the parties must have “filed in a record in the issuing
tribunal consents for a tribunal of this state to modify the support order and
assume continuing, exclusive jurisdiction.” 
Tex. Fam. Code Ann. §
159.611(a)(2) (Vernon 2008).  The version
in effect when the trial court entered the 1999 Order differed in that it
required “written consents” be filed in the issuing state. Id. 
§ 159.611(a)(2) (Vernon 1997).  The
parties disagree about whether they effectively consented to Texas’s
jurisdiction under section 159.611.  

The few cases from other jurisdictions considering
the adequacy of consents under the UIFSA indicate there is no particular form
in which such consent must be made so long as it clearly reflects the parties’
intent to consent to transferring exclusive and continuing jurisdiction in the
new forum.  A California court, in Knabe v. Brister, deemed a stipulation
entered into by the parties’ attorneys and filed in both California and Texas
agreeing that “California courts shall have jurisdiction over this matter for
all purposes including, but not limited to jurisdiction to modify the [Texas
Court order], and to make such orders as the court deems appropriate concerning
custody, visitation and support” to be effective, despite one party’s later
argument that his attorney lacked permission to stipulate to California
jurisdiction over support issues.  65
Cal. Rptr. 3d 493, 496–97 (Cal. Ct. App. 2007). 
In addition to rejecting the argument that a party’s attorney may not
effectively consent on behalf of that party, the court noted that complaining
party’s acquiescence in the California court’s jurisdiction in custody matters
ratified the attorney’s stipulation consenting to the transfer of both custody
and support matters to the California court. 
Id. at 500.     

In Nelson v.
Halley, a Mississippi court found jurisdictional recitations in agreed
temporary orders filed in Mississippi to be effective as consents to confer
jurisdiction on the Mississippi court to modify a California support order, but
remanded to the court for satisfaction of the requirement that consents be
filed with the California Court.  827 So.
2d at 50.  In finding effective consent,
the court focused on the expectation of the parties and the purposes sought to
be advanced to the consent requirement. 
The court ultimately concluded that the court’s deeming the consents as
effective despite their filing in the appropriate jurisdiction coming late in
the procedure did not run counter to any of the interests behind the consent
requirement.  Id.

The record here, taken as a whole, reflects the
parties’ intent that the Texas courts have exclusive and continuing
jurisdiction over all matters related to the parties’ divorce except for
equitable distribution of the property. 
Kim’s attorney, while reciting the parties’ stipulation related to
visitation and custody on the record in New York, stated that the “Court will
refer any future matters concerning visitation and custody to Texas court or
any court within the Uniform Custody Jurisdiction Act which might be the home
state of the children in the future.” 
David’s lawyer, during the same portion of the hearing, stated David was
“asking the Court to refer all future matters to whatever appropriate
jurisdiction.”  Later in the hearing,
however, when the court was discussing all the agreed terms to be incorporated
into a final decree, he specifically asked whether the judgment should “have a
full reference of all future matters both with regard to the matrimonial—matrimonial
issue and custody issue, to the Texas court,” to which David’s lawyer responded
“Yes, Your Honor.”  The parties and their
attorneys entered a written “Adoption of Oral Stipulation” agreeing that
“issues in this matrimonial action were disposed of by a Stipulation and placed
on the record in open court,” confirming their complete understanding of the
agreement, and consenting to their terms in the court’s judgment of
divorce.  The resulting New York Judgment
stated that “except for issues regarding equitable distribution, all future
questions concerning child support,
maintenance, enforcement, interpretation or modification of this Judgment
of Divorce shall be referred to the appropriate Court in the State of Texas
where the Defendant and the children of the parties reside, or any other
appropriate Court having jurisdiction.” (emphasis added).  Neither party took an appeal from the New
York Judgment, and there is no indication in the record that David ever
complained that the New York Judgment’s referring future support modification
issues to Texas or any other appropriate jurisdiction was inconsistent with the
parties’ agreement that the judgment purported to memorialize.

The parties’ conduct in the underlying suit bolsters
our conclusion that understood their consent to transfer of jurisdiction to the
Texas courts to encompass both enforcement and modification of support
obligations.  In David’s first pleading
in the Texas court, he stated “as set out in the terms of that Judgment for
Divorce, all future proceedings incident to this divorce and custody matter are
to be heard in Harris County, Texas.” 
And he has never in a filing sought to distinguish between the Texas
court’s jurisdiction over custody matters on the one hand and support matters
on the other.  For these reasons, we hold
the parties effectively consented to the Texas court’s exercise of jurisdiction
to modify the New York Judgment’s support provisions.

Having
concluded, as threshold matters, that—under these facts—UIFSA’s
registration procedures are not jurisdictional and that the parties effectively
consented to the Texas court’s exercise of jurisdiction over support matters,
we turn to David’s specific jurisdictional arguments.

3.     Are the 1999 and 2005 Orders
void?    

Citing Moore
v. Moore, No. 05-00-01766-CV, 2001 WL 1390921 (Tex. App.—Dallas Nov. 9,
2001, no pet.) (not designated for publication) as “directly on point,” David
argues that this Court must “analyze whether the trial court had subject-matter
jurisdiction when it rendered the 1999 and 2005 orders and whether the 1999 and
2005 orders served to establish the trial court’s jurisdiction to enter the
2009 Reformed Order.”  In Moore, the parties’ 1991 Florida divorce
decree was the subject of a later motion to modify child support filed in Texas
by the mother, a Texas resident.  2001 WL
1390921, at *1.  In 1995, the Texas court
signed an agreed order increasing the father’s monthly child support
obligation.  Id.  In 1999, the mother
filed a motion to modify the 1995 order, and the father moved to “dismiss the
petition to modify for lack of jurisdiction asserting the 1995 agreed order was
void and Florida still had continuing and exclusive jurisdiction over the
matter.”  Id.  The trial court granted
the motion to dismiss, and the court of appeals affirmed.  Id.

The mother argued on appeal that Texas “obtained
exclusive jurisdiction when the trial court signed the 1995 agreed order
modifying the Florida support order.”  Id. 
In response, the father contended “the 1995 agreed order is void because
the statutory requirements necessary for Texas to assume jurisdiction were
never satisfied.”  Id.  The Dallas court agreed,
noting that “it is undisputed that mother did not register the Florida support
order in Texas as required by the UIFSA,” and “there is nothing in the record to
indicate that mother and father filed with the Florida court written consent
permitting Texas to exercise exclusive jurisdiction over the Florida
order.”  Id. at *2.  The court went on
to explain,

Failure to
satisfy these statutory prerequisites precluded Texas from obtaining
jurisdiction to modify the Florida order. 
Because the 1995 agreed order modifying the Florida child support
obligation was entered without subject matter jurisdiction, the order is void.
This void order can therefore provide no basis for the trial court to decide
mother’s 1999 motion to modify.

 

Id. (citations omitted).  Acknowledging the mother’s argument that her
“failure to register the Florida order was nothing more than a procedural
complaint that father waived by failing to raise it in the 1994 modification proceeding,”
the court declined to treat the failure to register as dispositive, opting
instead to rest its decision on the lack of consent.  Id.
at *3.

Even assuming
that mother is correct in her assertion that registration of the foreign order
is not a jurisdictional requirement, it is undisputed that mother was a
resident of Texas at the time she filed her petition to modify the Florida
order.  Texas therefore had no authority
to act on mother’s petition. . . .  

 

Our
conclusion that the trial court lacked subject matter jurisdiction to modify
the Florida support order because mother was a resident of Texas makes it
unnecessary to address mother’s remaining points of error.  The 1995 agreed order upon which mother
relies exclusively to establish the trial court’s jurisdiction is void.      

 

Id.

Neither Moore’s reasoning nor
its result compels us to conclude that the 1999 and 2005 Orders are void.  Here, as the father did in Moore, David asks us to invalidate prior
final judgments, i.e. the 1995 and 2005 Orders, from which he did not take a
direct appeal.  There are specific
limitations on a court’s ability to void a previous order that is collaterally
attacked.  

A collateral attack, unlike a direct appeal, is “an attempt to avoid the
effect of a judgment in a proceeding brought for some other purpose.”  Armentor
v. Kern, 178 S.W.3d 147, 149 (Tex. App.—Houston [1st Dist.] 2005, no
pet.)  A party may only collaterally
attack a judgment as void.  Id. 
A “judgment is void only if the court had no jurisdiction over the
parties or the property, no jurisdiction over the subject matter, no
jurisdiction to enter the particular judgment, or no capacity to act as a
court.”  Id.  All errors other than
jurisdictional deficiencies render the judgment voidable, which may only be
corrected on direct appeal.  Id. 
“The party collaterally attacking the judgment bears the burden of
demonstrating the judgment under attack is void.”  Id.

“When reviewing a collateral attack, we presume the validity of the
judgment under attack.  Toles v. Toles, 113 S.W.3d 899, 914 (Tex.
App.—Dallas 2003, no pet.).  “We limit
our review to determining whether the record affirmatively and conclusively
negates the existence of jurisdiction, not whether the court otherwise erred in
rendering its judgment.”  In re K.M.P., 323 S.W.3d 601, 603 (Tex.
App.—Austin, 2010, pet. filed).  “While
we indulge every reasonable presumption in favor of the judgment’s validity, we
may consider only the face of the record and may not presume that something
omitted from the clerk’s record might have supported jurisdiction when faced
with a record that otherwise negates jurisdiction.”  Id.
at 603.       

Because we have held that failure to strictly comply with section
159.602’s registration procedures does not deprive the Texas courts of
subject-matter jurisdiction over a foreign support order, David waived any
complaint about Kim’s failure to comply with section 159.602’s requirements by
failing to take a direct appeal from the 1999 Order.  See,
e.g., Longhurst, 2008 WL 3876175,
at *4 (complaint about failure to properly register a foreign support order—a
statutory prerequisite to obtaining an enforcement order—could only render
enforcement order voidable, not void, so it was not subject to collateral
attack); In re Ocegueda, 304 S.W.3d
576, 580 (Tex. App.—El Paso 2010, pet. denied) (complaint about procedural irregularities
in obtaining expunction order could only render earlier judgment voidable, not
void, so it was not subject to collateral attack).

The 1999 Order does not, on its face, contain any jurisdictional
recitations.  And it is undisputed that
Kim resided in Texas, and David lived in Mexico City, when the 1999 Order was
entered.  Because the general rule is
that the petitioner in a modification proceeding must be a nonresident of Texas
before the court can exercise jurisdiction to modify a support order, Tex. Fam. Code Ann. 159.611(a)(2), if
the 1999 Order modifies, rather than simply clarifies and enforces the New York
Judgment, it is subject to being voided by collateral attack unless the record
demonstrates that an alternative basis for jurisdiction applies.  Cf.
Huffstutlar v. Koons, 789 S.W.2d 707, 710 (Tex. App.—Dallas 1990, no writ)
(prior custody determination could be voided in collateral proceedings where
the trial court’s basis for determining child’s “home state” was invalid and
resulted in order erroneously designating Texas as home state as basis for
Texas state court jurisdiction); Alfonso
v. Skadden, 251 S.W.3d 52, 55 (Tex. 2008) (where record affirmatively
reveals jurisdictional defect, court cannot assume alternative basis for
jurisdiction exists by indulging presumption that “something omitted from the
clerk’s record might have supported jurisdiction”).

The pleadings in the 1998/1999 proceedings leading to entry of the 1999
Order attach a copy of the New York Judgment, which attached and incorporated
the transcript of the hearing at which the stipulations were recited, as well
as the parties’ written “Adoption of Oral Stipulation.”  Because we have already concluded that these,
in combination, met the 1995 jurisdictional requirement that the parties file
“written consents” in New York for Texas to modify the New York Order and
assume continuing, exclusive jurisdiction over the order, Tex. Fam. Code. Ann. § 159.611(a) (Vernon
1997), David cannot demonstrate that the trial court lacked jurisdiction to
enter the 1999 Order.  This distinguishes
this case from the facts presented in Moore,
where there was no evidence of consent.   
Accordingly, David has not shown the 1999 Order to be void and it thus
cannot be collaterally attacked.  

Unlike the 1999 order, the 2005 Order does contain jurisdictional
recitations that the court, “after examining the record and the evidence and
argument of counsel, finds it has jurisdiction of the case and of all the
parties and that no other court has continuing, exclusive jurisdiction of this
case.”  And, in 2005 section 159.611 had
been amended such that jurisdiction could be established by demonstrating
consent was “filed in a record” in New York, without the earlier requirement
that such consent be “written.”  Tex. Fam. Code. Ann. § 159.611(a) (Vernon
2005).  The subject-matter jurisdictional
recitals in the 2005 Order afford that judgment a strong presumption of
validity, which can only be overcome by record evidence affirmatively revealing
a jurisdictional defect.  Alfonso, 251 S.W.3d at 55.  

David’s arguments for voiding the 2005 Order are identical to those he
lodges in collaterally attacking the 1999 Order, i.e., he argues that lack of
registration and consent void the 2005 Order. 
Our analysis of the registration and consent issue apply with equal
force to the 2005 Order and would sustain independent jurisdiction to modify
the support provisions of the New York judgment irrespective of whether the
1999 Order effectuated a substantive modification sufficient to confer
continuing, exclusive jurisdiction over future modification proceedings.  See Tex. Fam. Code Ann. § 159.611(d) (“On
issuance of an order by a tribunal of this state modifying a child support
order issued in another state, the tribunal of this state becomes the tribunal
of continuing, exclusive jurisdiction.”). 
David’s collateral attack of the 2005 Order fails as well.  For these reasons, we hold that David has
failed to establish that the 1999 or 2005 Orders are void.  

4.    
Is the 2009 Reformed Final Order void?

 

The parties disagree about whether the 1999 and 2005 Orders substantively
modified the New York Judgment or rather merely clarified and enforced it.  Kim claims that the “1999 Order adopted
certain terms of the New York Judgment (i.e., amount of child support);
clarified others (i.e. providing for conservatorship and parental rights under
the Texas statutory scheme) and substantively modified the New York child
support order by providing that payments would be made through the Harris
County child support registry and further by ordering wage withholding.”  She characterizes the trial court’s 2005
Order “providing for the specifics of David’s obligation to provide health
insurance” as a “child support modification order” as well.  David asserts that the 1999 and 2005 Orders
only clarified and enforced, rather than modified, the New York Judgment.  Nonetheless, he argues that “regardless of
whether the 1999 and 2005 orders were (1) void orders purporting to modify the
substance of the New York child support orders or (2) clarification orders not
affecting the validity of the New York support order, thus causing the New York
Judgment to stand as the lone child support order at the outset of the 2008–2009
litigation, it is clear that neither could provide a basis for the trial
court’s assertion of subject-matter jurisdiction to enter the 2009 Reformed
Order.”  

We need not decide here whether the trial court’s 1999 and 2005 Orders
modify, rather than merely enforce and/or clarify, the scope of the New York
Judgment.  It is undisputed that the 2009
Reformed Judgment that is the subject of this direct appeal is a modification
order and it is undisputed that, at the time that order was entered, Kim
resided in Texas and David did not.  As
such, the court could only modify David’s support obligations under either (1)
section 159.611(a)(2) (requiring foreign order be registered and parties to
have filed consents in New York) or (2) section 159.611(d) (conferring
continuing, exclusive jurisdiction to modify support terms if the court has
entered a prior support modification order). 
See Tex. Fam. Code Ann. § 159.611.

Regardless of whether the 1999 or 2005 Orders modified, or just enforced,
David’s support obligations under the New York Judgment, that foreign judgment
has been effectively “registered” since 1999 when judgment was entered
enforcing or modifying the New York Judgment with no objection from David that
the New York Judgment was not registered. 
Thus, the procedural registration prerequisite to the 2009 Reformed
Final Order as a stand-alone support modification order has been met.[8]  Because we have also already held the parties
effectively “consented” in New York, the issuing state, to the transfer of
jurisdiction over support matters, the trial court had jurisdiction to enter
the 2009 Reformed Judgment irrespective of whether the prior two orders had
conferred upon it continuing, exclusive jurisdiction to modify the New York
Judgment.  And because the trial court
had jurisdiction to enter the 2009 Reformed Final Order at issue in this
appeal, it is now the court of “continuing, exclusive jurisdiction” over support
matters.  Tex. Fam. Code Ann. § 159.611(d).

III.          
The terms of the 2009 Reformed Final Order enforcing and
modifying David’s support obligations.

 

David characterizes the trial court’s ordering him to deposit additional
funds into HK’s College Trust as modification, rather than enforcement, of his
existing support obligations.  He then
challenges—as exceeding the proven needs of the children—the trial court’s (1)
award of the additional money for HK’s College Trust, (2) continuing his $2,000
monthly support obligation, with a step-down to $1,600 when DK turns 18, and
(3) ordering David to pay DK and HK’s private high school tuition.  He further complains of the court’s including
“lump sum child support payments with a showing of good cause,” “failing to
make the findings required by Texas Family Code [§] 154.130,” and erroneously
“calculating Appellant’s net monthly resources” by not distinguishing between
the corpus and income from his trusts.   


Kim characterizes the trial court’s ordering David to deposit additional
finds into HK’s College Trust as proper enforcement, rather than modification,
because “David has an enforceable obligation to insure that the represented
funds for [HK]’s support and education past the age of 18 are secure and
available.”  After removing these
enforcement amounts from consideration, she argues that the trial court’s
modifications related to David’s support payments and private school tuition
“are reasonable in light of the needs of the children and the parties’ ability
and willingness to pay.”  Finally, she
contends that any failure by the trial court to make required findings and its
inclusion of trust principal in finding David’s net worth were harmless and, as
such, should not lead to reversal.  

A.   Applicable
law

“A registered order issued in another state is enforceable in the same
manner and is subject to the same procedures as an order issued by a tribunal
of this state.”  Tex. Fam. Code Ann. § 159.603(b).  “Modification of a registered child support
order is subject to the same requirements, procedures, and defenses that apply
to the modification of an order issued by a tribunal of this state, and the
order may be enforced and satisfied in the same manner.”  Id.
§ 159.611(b).  “[T]he court may modify an
order that provides for the support of a child . . . if the circumstances of
the child or a person affected by the order have materially and substantially
changed since . . . the date of the order’s rendition.” Id. § 156.401(a)(1)(A). 

B.   Standard
of Review

A trial court has broad discretion in ruling on child support matters and
will not be reversed absent a clear abuse of discretion. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). The test is
whether the trial court acted arbitrarily, unreasonably, or without reference
to guiding rules and principles. Id.  “[W]e review the evidence in the light most
favorable to the order and indulge every presumption in favor of the trial
court’s order.”  McLane v. McLane, 263 S.W.3d 358, 362 (Tex. App.—Houston [1st
Dist.] 2008, no pet.).  “If some
probative and substantive evidence supports the order, there is no abuse of
discretion.”  Id.  In contrast with the court’s broad
discretion in ordering and modifying support orders, the court has no
discretion to forgive proven child support arrearages.  Tex.
Fam. Code Ann. § 157.263 (Vernon 2008);
In re J.I.M., 281 S.W.3d 504,
508 (Tex. App.—El Paso 2008, pet. denied). 


“In an appeal of a judgment rendered after a bench trial, the trial
court’s findings of fact have the same weight as a jury’s verdict.”  Brejon
v. Johnson, 314 S.W.3d 26, 30 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  If findings are challenged, they are not
determinative unless supported by the record. 
Id.  We review the sufficiency of the evidence
supporting the challenged findings to determine whether the trial court abused
its discretion in making such findings.  Id.

C.   HK’s
College Trust – Enforcement or Modification?

David argues that the “New York Judgment does not contain any
stipulation, order, or agreement obligating David to pay for the children’s
college education.”  Nor does the New
York Judgment, he asserts, “provide any provision or order requiring David to
deposit funds into any trust for the purpose of payment of college tuition
expenses.”  Thus, he contends, the court
“creates a new child support obligation” by “requiring David to deposit a lump
sum of approximately $150,000 into the [HK] 1996 Trust more than five years
before she will graduate from high school.” 


Kim disagrees, asserting that “David already had an existing enforceable
obligation related to the payment of [HK]’s support and education after she
reached the age of 18 under the New York judgment” that “David has not fully
satisfied.”  She notes that, in the
parties’ stipulations, “David represented the present existence of
specific resources to pay for not only each child’s college education, but
their overall support after they reached the age of eighteen (18).”    Thus, she contends, the “trial court’s
order obligating David to fully fund [HK]’s trust was not a new child support
obligation but instead the enforcement of an existing one.”     

In a section of the 2009 Reformed Final Order entitled “Order on
Enforcement Regarding College Education Expense,” the court quotes the New York
Judgment order that “all future questions concerning child support,
maintenance, enforcement, interpretation or modification of this Judgment of
Divorce shall be referred to the appropriate court in the State of Texas where
the Defendant and the children of the parties reside, or any appropriate court
having jurisdiction,” and concludes “[t]his Court finds that it is the
appropriate Court to enforce the New York Judgment of Divorce.”  

The court then recites the following portions of the parties’
stipulations:

The parties recognize the need for a college
education for the children.  And husband
in particular represents to his wife, to me and to the Court that there is a
collateral source existing for that payment: it is in the sum of at least
$250,000 at the present time, pursuant to a trust instrument that is
administered now out of Boston in which Mr. Battinelli is familiar.  That he further represents that there is
enough funding in that trust to pay for an undergraduate education in behalf of
the children.  

. . . .

With regard to the child support . . . will continue
until the age of 18 for the oldest child. 
At which time the, what was referred to by Mr. Woronov as the college
trust – there are actually two separate trusts, one for each of the children:
[HK] and [DK].  And those are actually
well-being trust[s].  They include more
than just college education.  So that at
the time the oldest child is 18, Mr. Kendall will stop making direct payments
for child support for that child to Mrs. Kendall and the trust provisions will
kick in and take over, the entire support as well as the cost of college
education.  And I will also point out
that there is no limit in time contained in those trust instruments so that
there is no date or age by which a child must complete college.

 

Finally, the court noted that David agreed he would “abide by those
terms” if incorporated into a divorce decree. 
Stating that “the representations of David F. Kendall as to [HK] were
not true,” and that “David F. Kendall has failed to comply with and abide by
the provisions of the New York Judgment of Divorce,” the order further
provides:        

David Kendall is therefore ORDERED to transfer funds or asserts into the
[HK] 1996 Trust, as additional child support, in an amount sufficient to bring
the aggregate value of that trust corpus to the amount of $250,000. . . IT IS
ORDERED that this obligation shall be in the nature of child support.

 

The court’s Findings of Fact and Conclusions of Law from Reformed Order
dated October 29, 2009 (“Findings of Fact”) additionally provide:

31.     [A]t the time of the trial
in this cause, the aggregate amount of the [HK] 1996 Trust was approximately
$97,000.  The Court further finds that
David F. Kendall testified that the current balance of the [HK] 1996 Trust
would not be sufficient to pay for four years of college.

32.     The Court finds that Kim M.
Kendall relied upon the representations by David F. Kendall and his
representative or agents . . . at the time of divorce that trust funds were in
existence to pay for the children’s college education expenses as well as all
expenses for the children’s support during their college years.  Based upon this representation, Kim M.
Kendall agreed that David F. Kendall’s periodic child support obligation to her
would cease when each child turned 18 years old and graduated high school
rather than continue until each child turned 21 years, in accordance with New
York law.  

33.     The Court finds that Kim M.
Kendall has not routinely received statements for the [DK] 1994 Trust or the
[HK] 1996 Trusts.  The Court further
finds David F. Kendall did not provide Kim M. Kendall copies of the trust
instruments until he was compelled by this Court and sanctioned in January
2009.  The Court finds that David F.
Kendall was previously ordered to provide the trust instruments by this Court
in 1999.

34.     The Court further finds that
no trust or trust provisions exist which require the trustees to
disburse funds to pay for either child’s college education.  The Court further finds that no trusts or
trust provisions exist which require the trustees to disburse funds to
pay for either child’s living expenses during their college years.  The trustees for the [DK] 1994 Trust and the
[HK] 1996 Trust have absolute discretion to accumulate or disburse trust funds.

35.     The Court finds that the
terms of the [DK] 1994 Trust do not permit trust funds to be extended for the
benefit of [HK] or any person other than [DK] during [DK]’s lifetime.  

36.     The Court finds that no
contributions have been made to either the [DK] 1994 Trust or the [HK] 1996
Trust since the parties’ divorce in 1998.

37.     The Court finds that Kim M.
Kendall received fewer assets in the divorce in exchange for David F. Kendall’s
commitment to take care of the children’s college education expenses.

38.     The court finds that at
trial, David F. Kendall acknowledged that he intended to make future
contributions to [HK]’s trust when this litigation with Kim M. Kendall
concluded, and that with existing trust asserts as well as the use of his own
funds, the children’s college expenses would be paid.  

39.     The court finds that by
representing in 1998 that sufficient funds existed in trusts to pay for the
college education and support of both children after the age of 18 years, David
avoided an obligation to pay child support for the children through the age of
21 under New York law.

40.     The court finds that some of
the funds held in the children’s trusts at the time of the parties’ 1998
divorce were contributed by David F. Kendall and Kim M. Kendall during their
marriage.

  

David does not challenge any of the Court’s findings specifically, but
generally argues that (1) the court’s conclusion that David represented in the
New York proceedings that each
child’s trust contained $250,000 is wrong, and (2) the court’s “unilateral[]
determin[ation] that the approximately 97,000 in the [HK] Kendall 1996 Trust
was insufficient to pay for [HK]’s undergraduate education” was “speculative at
best” because its veracity depends on market conditions, future deposits, and
the college at which HK might enroll.  

We disagree with David on both counts. 
The stipulations referred to funds currently existing at the time of the
parties’ 1998 divorce, not funds that might be available in the future.  And Kim’s attorney expressed Kim’s
understanding to the New York court—while discussing the parties’ agreement as
to “the need for a college education for the
children”—David’s representation that “there is a collateral source existing
that payment; it is in the sum of at
least $250,000 at the present time. . . . he further represents that there
is enough funding in that trust to pay for an undergraduate education in behalf
of the children . . . .”  David’s own attorney clarified later in the
hearing that support payments for both children cease when the children turn
18, and that “the trust provisions will kick in and take over, the entire
support as well as the cost of college education.”  These representations were expressly incorporated
by the New York court as part of the New York Judgment.  

Although David does not expressly offer an alternative interpretation to
the court’s finding that he represented that each trust had a balance of at least $250,000, implicit in his
argument is the assumption that the stipulations only provide that the
children’s trusts, in total, contained at least $250,000.  The problem with that interpretation is that
the stipulations further provide that the sums in each trust will cover “the
entire support as well as the cost of a college education.”  The court did not, as David asserts,
“unilaterally determine[]” that the funds in HK’s trust were insufficient to
pay for HK’s undergraduate education. 
David himself testified as much. 
When the question was posed: “So—the statement—the statement that there
was enough funding in those trusts to pay for college education could not have
been true for [HK], correct?,” David responded “At the time, no.”  And he further agreed that “as we sit here
today, with 97 something thousand dollars in that trust, that is not sufficient
to pay all of her college and living expenses beyond the age of 18.”  David does not dispute that DK’s trust cannot
be used to benefit HK.  Nor does David
challenge the court’s finding that, in reliance on his representation that
trust funds were in existence to pay for the children’s college and living
expenses—Kim agreed his child support obligation would cease when the children
reached 18 instead of 21, and that she received fewer assets in the divorce in
exchange for his commitment.  

We find the trial court’s concluding “that David F. Kendall undertook a
legal obligation to insure that at least $250,000 in funds were available in
the HK Trust to fund her college education” was supported by the evidence.  Once the court determined that representation
was not true, it was empowered to order a lump sum payment to enforce that
David’s obligation under the New York Judgment. 
Tex. Fam. Code Ann. §
159.305(b)(2) (court may enforce foreign support order by ordering “obligor to
comply . . . and specify the amount and the manner of compliance”); see also id. § 157.263 (authorizing the
court to render a cumulative money judgment for support arrearages, including
“lump sum[s]”).  Because we conclude the
court’s ordering David to deposit funds into HK’s College Trust was an
enforcement of the New York Judgment, we reject David’s contention that it
amounted to an improper modification of his support obligations.          

D.  
Are the trial court’s support modifications
within its discretion?

David
argues that the trial court’s modification of his support obligation “exceeds
the proven needs of the children.”  He
specifically indentifies three support payment obligations imposed on him by
the 2009 Reformed Final Order: (1) $2,000 per month until DK is emancipated, at
which time the payment drops to $1,600; (2) 100% of the tuition and fees of
both children’s private high school tuition, in a lump sum payment in advance
of each school year; and (3) approximately $150,000 lump sum payment into HK’s
College Trust.  We have already concluded
that the payment to HK’s trust is not a new support obligation, but rather the
enforcement of the New York Judgment.  We
thus only address David’s arguments directed at the monthly support payments
and the high school tuition here.   

When an
obligor’s net resources exceed $7,500 per month, the court is to apply the
presumptive percentage guidelines to the first $7,500 in net resources.  Tex.
Fam. Code Ann. § 154.126(a) (Vernon 2010).  The presumptive percentage guideline applied
to the net resources of an obligor with two children before the court is 25% of
the obligor’s net resources.  Id. § 154.125, § 154.126.  The trial court “may order additional amounts
of child support as appropriate, depending on the income of the parties and the
proven needs of the child[ren].”  Id. § 154.126(a).  If the court orders more than the presumptive
award, section 154.126(b) requires that the court first determine the proven
needs of the children.  If the needs of
the children exceed the presumptive amount, the court subtracts the presumptive
amount from those needs and then allocates between the parties the
responsibility to meet those needs, according to the parties’
circumstances.  Id. § 154.126(b).  The
obligor may not be ordered to pay more child support than the greater of the
presumptive amount or 100% of the children’s proven needs.  Id.    

The
trial court found Kim’s monthly net available resources to be $5,952.  It found David’s monthly net resources
include “both earned income and substantial resources in the form of trust
assets.”  In its Findings of Fact, the
court outlines the various trusts of which David is a beneficiary, and notes
that the full amount of his distributions are not reported on his income tax
return based on IRS reporting rules for trust distributions.  The court then concluded that “the net
resources available to David F. Kendall exceed $20,000 per month.”  

 The court recognized that the presumptive
guideline amount of support—applied to David’s first $7,500 of David’s net
resources—is $1,875 per month.  It then
listed the following as “reasons the amount of periodic support per month
ordered by the Court varies from the amount computed by applying the percentage
guidelines”:

a.     David F. Kendall has paid $2,000 in monthly periodic child support since
he agreed and stipulated to that child support amount in July, 1998 and said
stipulation was approved as the Judgment of Divorce . . . . 

b.     Neither party pled for or otherwise requested a decrease in the $2,000 periodic
monthly payments.

c.      After [DK] reaches majority, then David F. Kendall’s support payments
should “step down” or reduce by 5% to $1,600 per month in accordance with the
Texas Family Code.  

d.     The proven needs of the children warrant additional periodic monthly
child support.

e.      The expenses pertaining to the children have increased since 1998 when
the monthly periodic child support was initially ordered.

The court made additional specific Findings of Fact in support of its
order that David “should be ordered to pay, in addition to periodic monthly
child support, tuition and fees for both children to attend private high
school:”

a.     The parties agreed and stipulated [in their divorce] that the children
should attend private school.  Funds were
set aside to pay private school tuition and educational expenses at the time of
divorce.  These funds . . . have been
depleted to pay for the children’s elementary and middle school costs since
1998.

b.     At the time of trial, the parties stipulated that the children should
remain in private school through high school graduation.  Further, the Court finds that both parties
agreed that the public school options available to the children are not
desirable or satisfactory to either parent.

c.      Both parties have approved [DK]’s choice [of private high school].

d.     The Court finds it was not possible for Kim M. Kendall to save sufficient
funds from periodic child support payments received each month to pay for the
children’s private school after the trust funds were depleted.  The Court further finds that Kim M. Kendall
cannot afford to pay 100% of private high school tuition and expenses for
either child.  

David
does not challenge any of these findings. 


1.    
Additional support payments for HK
upon DK’s emancipation

David does not lodge any complaint specifically
directed at the court’s continuation of his obligation to pay $2,000 per month
or the court’s stepping down the support to $1,600 when DK turns 18.  Rather, he notes that the $2,000 exceeds the
relevant presumptive guidelines amount and argues generally that the trial
court has awarded an amount that exceeds the proven needs of the children.    

David’s $2,000 monthly support payment exceeds by
$125 per month the presumptive amount for 2 children, i.e., $1,875, derived by
applying the guidelines to the first $7,500 of his net monthly resources.  David did not, however, request that amount
be lowered to $1,875, and the trial court’s continuing this previously ordered,
agreed-upon amount, was not a modification of his existing support obligation.

The court’s order providing a step-down in support
payments from $2,000 to $1,600 does represent a modification of David’s support
obligation.  Under the New York Judgment,
David is obligated to pay $1,000 per month per child until the child reaches
the age of 18.  Thus, under that
agreement, when DK turns 18, David support obligation would change from $2,000
to $1,000.  

The trial court was presented with detailed evidence
about the children’s expenses and their extracurricular activities, as well as
direct testimony about how their expenses have increased since the New York
Judgment was entered.  E.g, Brejon,
314 S.W.3d at 29 (recognizing uncontroverted testimony as to increased living
expenses as supporting modification).  
The court’s modifying David’s support obligation to provide a step-down
to $1,600 when DK turns 18 was supported by the court’s finding of a material
and substantial change in circumstances. Tex.
Fam. Code Ann. § 156.401(a)(1)(A). The modified amount providing a step
down by 5% was in accordance with the step-down provided by the
guidelines.  E.g., Tex. Fam. Code Ann.
156.402 (“[T]he court may modify the order to substantially conform with the
guidelines if the modification is in the best interest of the child.”).  The trial court did not abuse its
discretion.        

2.     Private-school
tuition

In complaining of the trial court’s order that he
pay 100% of the children’s private high school tuition, David does not
challenge the trial court’s finding that the DK’s and HK’s private-school
tuition is a proven need.  Instead, he
complains that (1) the award is too uncertain because HK has not yet identified
a school, and (2) the court did not have “good cause” to order lump sum tuition
payments at the beginning of the school year.

At the time of trial, DK had been accepted into his
private high school of choice.  An
information sheet and tuition schedule for that school was entered into
evidence indicating that annual tuition for the 2009–2010 school year is $13,600
(payable in either one or two payments). 
HK had not yet applied or been accepted to any particular private high
school, but Kim testified about three high schools she planned to apply for
admission for the 2010–2011 school year. 
An information sheet about those three schools, as well as a sampling of
other available Houston private high schools, was entered into evidence.  These exhibits reflected the tuition of HK’s
two favored schools as $16,515 (payable in one, two, or nine payments) and
$10,950 (payable in one or two payments). 
Kim’s expense projections estimated HK’s high-school tuition would
average $13,000 per year. 

David complains that, “[w]ithout knowledge of the
amount of the tuition that will be required to be paid or the school to which
the tuition was to be paid, the trial court ordered David to pay 100% of [HK]’s
high school tuition and fees.”  See In re Grossnickle, 115 S.W.3d 238,
249 (Tex. App.—Texarkana 2003, orig. proceeding) (order providing father to pay
1/2 tuition too vague to be enforced). 
This prejudiced him, he asserts, because not knowing the tuition amount
could hinder the court’s ability to determine if he is being required to pay
for more than the children’s proven needs: 


When a child
support order that requires payment of child support in excess of the child
support guidelines fails to specify the exact amount of support the obligor is
required to pay, the calculation necessary to determine whether the orders
require the obligor to pay child support in an amount that exceeds 100 percent
of the proven needs of the children becomes impossible.  Tex.
Fam. Code Ann. § 154.126(b).  As
David was ordered to pay an unspecified amount of tuition and fees for the
children’s private high school tuition, the child support award hinders the
ability of the parties to prepare statutory calculations necessary to verify
whether the child support award exceeds 100% of the children’s proven needs.

 

We disagree. 
While David complains that the statutory calculation for determining if
ordered support exceeds the children’s proven needs cannot be performed, he in
fact performed that very calculation in his brief.  Relying on the uncontroverted evidence
introduced at trial about the children’s expenses, DK’s high-school tuition,
and the estimate of $13,000 for HK’s high-school tuition, David calculates the
children’s monthly proven needs to be between $8,077.18 and $9.376.57.  

The approximately $4,500 per month—$2,000 in regular
support payments plus approximately $2,500 in private school tuition—David was
ordered to pay is well below the proven need range of $8,077.18 to
$9.376.57.  And, if HK’s tuition is
higher than the estimated $13,000, the proven needs ranged based on $13,000
would correspondingly increase.  We thus
do not agree that the uncertainty regarding the amount of HK’s tuition might
result in David’s paying more than 100% of the children’s proven needs.

David also complains that the court did not
demonstrate “good cause” for ordering him to pay annually 100% of the
children’s private high school tuition and fees in a lump sum.  Good cause, he asserts, “contemplates, at a
minimum, a connection between the award and the needs of the child or children
to be supported.”  He states that it is
“common for parents with children attending private schools to make installment
payments specifically sanctioned by the school when paying the children’s
tuition,” and complains that “there was never a reason provided why David
should not be permitted to make monthly payments to the children’s high
school.”      

The statutory provision he cites in support of this
good cause requirement, however, contains no such limitation on lump-sum
awards.  See Tex. Fam. Code Ann.
§ 154.003 (Vernon 2008) (providing that the “court may order that child support
be paid by: . . . a lump-sum payment”). 
And the cases David cite in support involve a predecessor statute to
section 154.003 that did contain a good cause requirement.  See
Kahn v. Kahn, 813 S.W.2d 708, 709 (Tex. App.—Austin 1991, no writ)
(evaluating whether good cause was shown to support a lump-sum award under
former Texas Family Code 14.05(a) (Vernon 1991), which provided that the court
“may order either or
both parents to make periodic payments or, for good cause shown, order a
lump-sum payment”).  In any event, it
does not appear from the record that David ever requested that the trial court
permit him to make periodic tuition payments, and the evidence demonstrated
that the tuition policies of DK’s high school and one of HK’s favored schools
do not permit monthly payments.  The
trial court did not abuse its discretion in ordering the children’s tuition
payments be made annually in a lump sum.          

E.   Trial
court findings

 

David’s final two points are directed at the trial
court’s findings.   He first complains that the court failed to make the mandatory
findings under section 154.130, which requires the court to state—if requested
by a party or if the court varies from the presumptive guidelines—(1) the
monthly net resources of the obligor, and (2) the percentage applied to the
obligor’s net resources for child support. 
Tex. Fam. Code Ann. §
154.130 (Vernon 2008).  He further
asserts that that the trial court erred by including trust assets, rather than
just trust income, when concluding David’s “net monthly resources exceed
$20,000.”  

Although David claims that “the trial court findings
do not identify the obligor’s net resources,” the court made the finding that
“the net resources available to David F. Kendall exceed $20,000.00 per
month.”  “[W]here a person’s income and
net resources vary a great deal from month to month, it may only be possible to
state a range of net resources.”  E.g., Ikard v. Ikard, 819 S.W.2d 644, 651 (Tex. App.—El Paso 1991, no
pet.) (holding statement that obligor’s net resources is “between $14,000 and
$20,000 per month” was definite enough finding).  David’s financial information at trial
reflected numerous and various sources of cash flow in the form of salaries and
various trusts from which David has received varying distributions over the
years.  In light of this, the court’s
finding complied with the requirement that the court find the “obligor’s net
resources.”  Id.         

The court further found that the “percentage applied
to obligor’s net resources for periodic monthly child support does not exceed
50% of net resources.”  David nonetheless
complains that the court should have stated “the percentage applied to the
obligor’s net resources for child support.” 
When the court cannot calculate a specific amount of obligor’s net
resources and instead provides a range, it does not have to calculate a
percentage applied to obligor’s net resources. 
Roosth v. Roosth, 889 S.W.2d 445, 453 (Tex. App.—Houston [14 Dist.] 1994,
writ denied).  

This Court has also recognized that
when the obligor’s net resources exceed the guideline range—$7,500 in this
case—and the complained-about support is based on the children’s proven needs,
the court’s order does not represent a variation from the presumptive
percentage guidelines.  Hatteberg v. Hatteberg, 933 S.W.2d 522
(Tex. App.—Houston [1st Dist.] 1994, no writ). 
Any error by failing to enter more specific findings is harmless, as
David has not demonstrated, or even argued, that the lack of more specific
findings prevented him “from properly presenting a case to the appellate court.”  Stanfield
v. Stanfield, No. 01-05-00379-CV, 2005 WL 3454139, at *2 (Tex. App.—Houston
[1st Dist.] 2005, no pet.) (mem. op.)

The trial court’s finding that “the monthly net
resources available to David F. Kendall include both earned income and
substantial resources in the form of trust assets” is likewise harmless.  David complains that only trust income, not
trust assets, are properly included in “net resources.”  There was evidence before the court, though,
that David’s net monthly resources exceed the $7,500 cap without reference to
any distributions of trust principal or corpus. 
And, in cases involving a high income obligor (one having net resources
in excess of $7,500), the court may order additional amounts for the proven
needs of the children without further reference to the guidelines.  Tex.
Fam. Code Ann. § 154.126.  Thus,
the inclusion of David’s trust corpus distributions in the court’s “net
resource” finding did not weigh in any calculation of support under the
guidelines.  And David has not
articulated any harm he suffered as a result of this alleged error.         

CONCLUSION

We conclude that the trial court had jurisdiction to
both enforce and modify the New York Judgment. 
Finding no abuse of discretion in the trial court’s enforcement or
modification of David’s support obligations, we affirm the trial court’s
judgment.  For the reasons expressed in
this opinion, and because this direct appeal provides David an adequate
appellate remedy, David’s petition for writ of mandamus challenging the trial
court’s jurisdiction is also denied.     

     

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.

 











[1]
          After the trial court entered
judgment in this case, David filed a petition for writ of mandamus contending
that the trial court’s order was entered without subject-matter jurisdiction
and that such a void order can be remedied by mandamus.  Because this direct appeal from the trial
court’s judgment provides David an adequate appellate remedy, we deny that
petition and address his jurisdiction argument here.  





[2]
          The parties’ stipulation in the
New York litigation stated that “visitation will include some time for Mr.
Kendall, alternate holidays and for vacation periods, those times to be worked
out.”  





[3]
          There is a separate registration
section in the Texas Family Code applicable to “child custody determinations”
that making registration of a foreign child-custody determination a statutory
prerequisite to enforcement or modification of its provisions.  See Tex. Fam. Code Ann. § 152.305(a) (Vernon
2008).  There is no indication either
party ever sought registration of the New York Judgment under that section
either, although both parties requested at various times that its possession
provisions be modified.    





[4]
          David does not argue either of
these purposes were not served in this case. 
Although not expressly articulated in his brief, it appears his complaint
is only with Kim’s failure to follow the technical procedures outlined in
section 159.602 for registration, such as the requirement that a letter of
transmittal be sent to the court clerk “requesting registration and
enforcement” along with “two copies, including one certified copy, of the
order.”  Tex. Fam. Code Ann. §
159.602.





[5]
          David
cites several other cases from other jurisdiction as “concluding that foreign
child support orders must first be registered before another state obtains the
subject-matter jurisdiction to modify or enforce the order,” but we disagree
that these cases hold failure to comply with registration procedure implicates
subject-matter jurisdiction.     





[6]           In
conjunction with that request, he also asked the court to terminate his
obligation to pay child support for that child if he was awarded custody.  Nelson,
827 So. 2d at 44.

 






[7]
          Other jurisdictions have
likewise declined to view the UIFSA’s registration requirements as
jurisdictional.  E.g., Summers v. Ryan,
No. E2006-01757-COA-R10-JV, 2007 WL 161037, at *3 (Tenn. Ct. App. Jan. 23,
2007) (“[T]he alleged shortcomings of Ms. Summers’ petition to register a
foreign judgment under the UCCJEA or UIFSA do not deprive the Rhea County
Family Court of subject matter jurisdiction, but rather result in the foreign
judgment being unregistered and unenforceable until the technical filing
deficiencies are cured.”); State v. Hill,
No. A05-781, 2006 WL 1229137, at *5 (Minn. Ct. App. May 4, 2006) (holding trial
court erred by modifying foreign support order without requiring petitioner to
register it pursuant to the UIFSA, but “that father waived any objection to
this procedural defect by not raising it”). 





[8]
          Throughout most of David’s
brief, he argues that failure to properly register a foreign support order
deprives the court of subject-matter jurisdiction under the UIFSA.  His brief also includes the statement that
the “trial court’s action in modifying and enforcing an unregistered New
York child support order without reference to the registration mandates of
UIFSA is a clear abuse of discretion,” followed by the request that this Court
“order the trial court to vacate the Reformed Order . . . pending compliance
with the UIFSA registration statutes.” 
For reasons previously discussed, this registration complaint—while a
proper subject for direct appeal—is untimely. 
That complaint could only have been brought on direct appeal from the
court’s 1999 Order enforcing and/or modifying the New York Judgment.